## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 25 2015, 9:30 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Chris M. Teagle
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of:

C.S. *(Minor Child)*

and

C.S. *(Father)*,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

March 25, 2015

Court of Appeals Case No.
05A02-1408-JT-574

Appeal from the Blackford Circuit Court

The Honorable Dean A. Young, Judge

Trial Court Case No.
05C01-1311-JT-69

## Robb, Judge.

## Case Summary and Issue

C.S. ("Father") appeals the juvenile court's termination of his parental rights to his son ("Child"). Father raises several issues for our review, which we consolidate and restate as one: whether the juvenile court's termination order is supported by clear and convincing evidence. Concluding the juvenile court's order is not clearly erroneous, we affirm.

## Facts and Procedural History

When Child was born to V.S. ("Mother") out of wedlock on August 30, 2010, his meconium tested positive for tetrahydrocannabinol, the active ingredient in marijuana. The Indiana Department of Child Services ("DCS") opened an informal adjustment with Mother and Child. Father, a minor at the time of Child's birth, signed a paternity affidavit following Child's birth.[1] He was aware of the informal adjustment but had only sporadic contact with DCS throughout the informal adjustment period. Therefore, DCS focused on assisting Mother. During the nine-month period of informal adjustment, DCS received several reports about the family, including a report that caregivers for Child—Mother, Father, and other adults in the household —were using drugs in Child's presence. At the conclusion of the informal adjustment period, DCS felt it was unable to assure Child's safety without court intervention and

---

[1] Father's paternity was officially established in May 2011.

initiated Child in Need of Services ("CHINS") proceedings. Mother had moved ten to twelve times during the informal adjustment, and her compliance with the offered services had been inconsistent. However, Child had always appeared healthy and clean and was meeting his developmental milestones, so after he was adjudicated a CHINS in July 2011, he remained in Mother's care as an "in-home CHINS." Transcript at 16.

[3]     As part of the CHINS proceeding, Mother was ordered to abstain from drug use and submit to drug screens at the request of DCS. After Mother failed numerous drug tests in the next several months, DCS filed a petition for contempt and requested review of Child's placement. In addition to concerns over Mother's issues, DCS had continuing concerns that Father was selling and using drugs and "just living a lifestyle that was not conducive to a safe placement for [Child]." Id. at 21. In June 2012, the juvenile court ordered that Mother be jailed for contempt and that Child be removed from Mother's care and temporarily placed with his maternal grandmother. The family's DCS caseworker testified that "the basis for the removal is, uh, basically the child was left without a caregiver; uhm, his mother had been arrested, leaving him without obviously her care, uhm, and at that point in time, [Father's] involvement was not assured. So, obviously we had concerns about [Father] as well that led [ ] us to recommend that [Child] be placed in relative foster care." Id. at 20-21. Child has remained in the care of his maternal grandmother since June 19, 2012.

[4] After the CHINS case began, DCS's focus also extended to Father. However, Child has never been in Father's sole care, and DCS has never recommended such placement. Father was ordered to submit to random drug screens, maintain stable residency, participate in supervised visitations with Child, stay in contact with DCS, and participate in a home-based program to help educate and support him in parenting. The family caseworker testified that Father's compliance with services was sporadic, in part because Father insisted it was Mother's conduct alone that resulted in Child's removal and there was no reason for him to participate in services.

[5] After Father turned eighteen in December 2012, he became more interested in having Child in his care and filed a motion for change of placement. After a hearing, Father's motion was denied, but the juvenile court informed Father that if he refrained from the use of controlled substances and participated in parenting time and other services, his request would be reconsidered at a review hearing. In the next four months, Father committed numerous violations of the court's order, and following the review hearing, Child was continued in relative placement.

[6] In November 2013, DCS filed a petition for involuntary termination of both Mother's and Father's parental rights. At the fact-finding hearing held in June 2014, Mother voluntarily relinquished her parental rights, and the hearing went forward as to Father alone. The testimony shows that throughout the proceedings, Father tested positive for drugs or failed to appear at several drug screens, last saw Child seven months prior to the termination hearing, and had

no verified source of income, though he did maintain a residence. In addition, Father was incarcerated at the time of the termination hearing. DCS's reasons for recommending termination of Father's parental rights were that

> he has never fully engaged with services. He's never been compliant in order for us to assure that obviously [Child] would be cared for while he had him, so, my concern would be that we would have just more of the same. The fact that the criminal behavior, the drug use, just all of the things that [Child] was removed for would continue and obviously lead to his removal again or worse.

*Id.* at 49.

[7] Child's Guardian Ad Litem also recommended to the court that Father's parental rights be terminated:

> [M]y concerns, Your Honor, lie with the fact that while [Father] has even initiated proceedings to change placement in this case, he's indicated an interest in being involved in his child's life. After having made those representations to the Court, all the tools have been placed in front of him, Your Honor, to reunify with this child. In fact, very simple directives have been placed in front of him. [D]on't use illegal substances. . . . Those have not been able to be followed. Participate in services . . . . Whether you think you need to or not, the directive was given to him. You know, if you show up for these things, you indicate even a minimal level of participation, you have an excellent chance of reunifying with your child and we've just got mountains of evidence that those opportunities were placed before [him] and for reasons of his own doing, he's been unable to follow through with those.

*Id.* at 104-05.

[8] Following the hearing, the juvenile court issued an order finding that Father had multiple opportunities to address and remedy his substance abuse addictions but failed to do so and had not successfully completed reunification

services.  "These deficiencies on the part of [Father] . . . all clearly and convincingly demonstrate that the conditions that resulted in [Child's] removal or the reasons for placement outside the home will not be remedied.  These same findings also demonstrate that the continuation of the parent-child relationship poses a threat to the well-being of [Child]."  Appellant's Appendix at 37-38.  Accordingly, the juvenile court found that termination of Father's parental rights was in Child's best interests.  Father now appeals.

# Discussion and Decision

## I.  Standard of Review

"[T]he involuntary termination of parental rights is an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed . . . ."  *In re K.W.*, 12 N.E.3d 241, 249 (Ind. 2014) (quotation omitted).  Indiana Code section 31-35-2-4 sets out what must be proven in order to terminate parental rights:

> (2) The petition must allege:
> (A) that one of the following is true:
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> * * *
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of being alleged to be a child in need of services . . .;

(B) that one (1) of the following is true:

 (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

 (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

 * * *

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must prove each element by clear and convincing evidence. Ind. Code § 31-34-12-2; *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009). If a juvenile court determines that the allegations of the petition are true, then the court will terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[10] When we review a termination of parental rights, we neither reweigh the evidence nor judge witness credibility, *In re C.G.*, 954 N.E.2d 910, 923 (Ind. 2011), and we consider only the evidence and reasonable inferences most favorable to the judgment, *S.L. v. Indiana Dep't of Child Servs.*, 997 N.E.2d 1114, 1123 (Ind. Ct. App. 2013). As required by statute, the juvenile court entered findings of fact and conclusions. *See* Ind. Code § 31-35-2-8(c). We therefore apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *In re C.G.*, 954 N.E.2d at 923. "We will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous.

Clear error is that which leaves us with a definite and firm conviction that a mistake has been made." *S.L.*, 997 N.E.2d at 1123 (citation omitted).

## II. Termination Order

[11] Father contends the juvenile court's termination order was clearly erroneous in several respects. First, he claims DCS failed to prove that the petition was timely filed. He also claims DCS failed to prove Child was removed from *him*, and that DCS failed to prove the reasons for removal were not remedied.

## A. Timeliness of Petition

[12] DCS alleged in its petition for involuntary termination of parental rights that Child had been removed from the parents for at least fifteen of the most recent twenty-two months. *See* Appellant's App. at 10. Child was removed from Mother's care under a dispositional order on June 19, 2012. The petition for termination was filed on November 6, 2013, a period of slightly more than sixteen months. At the conclusion of the termination hearing, the juvenile court *sua sponte* requested that the parties submit briefs on the issue of whether the termination could be granted when Father did not reach the age of majority until December 2012, mid-way through those sixteen months. The parties submitted briefs as requested, but the juvenile court did not reference the issue in its order, other than to conclude that "the child has been removed from the home of the biological mother and remained in placement outside the home from June 19, 2012 to the present date or approximately 24 months." *Id.* at 39. Therefore, the juvenile court apparently concluded the time of filing the petition

was no impediment to termination. On appeal, Father contends that because he did not turn eighteen until December 2012, DCS has failed to prove the petition was timely filed as to him.

[13] Parents have a constitutionally protected right to establish a home and raise their children, and therefore, DCS "must strictly comply" with the statute allowing involuntary termination of that right. *In re K.E.*, 963 N.E.2d 599, 601 (Ind. Ct. App. 2012) (quotation omitted). Statutory requirements for an involuntary termination of parental rights are "clear and unequivocal": the State must prove by clear and convincing evidence that at least one of the requirements of Indiana Code section 31-35-2-4(b)(2)(A) is true at the time the termination petition is filed. *Id.* (quotation omitted).

[14] Father cites no authority in support of his proposition that the time period after which DCS can file a petition for involuntary termination is tolled during a parent's minority and attempts to read a limitation into the statute which does not exist. The statute clearly and unequivocally states that at the time the termination petition is filed, the child must have been removed from the parent[2] for at least fifteen of the last twenty-two months. The statute does *not* say that at the time the termination petition is filed, the child must have been removed from a parent *who was over the age of eighteen for at least fifteen months*. There is no

---

[2] We will discuss Father's argument regarding whether Child was in fact removed from him in the next section.

language in the statute that would support Father's assertion that the clock did not run on that fifteen months while he was a minor.

[15] In fact, our statutes provide that a minor parent can voluntarily relinquish parental rights. Ind. Code § 31-35-1-9(b) ("A person who is less than eighteen (18) years of age and who is a parent may give the person's consent [to termination] without the approval of the court or of the parent's guardian if the person is competent except for the person's age."). Minor parents are treated just as adult parents are in those circumstances, as they should be in this circumstance as well. The termination of the parental rights of minors have been affirmed by this court in the past. *See, e.g.*, *D.T. v. Indiana Dep't of Child Servs.*, 981 N.E.2d 1221, 1226 (Ind. Ct. App. 2013) (holding no due process violation occurred when minor parent was not appointed a guardian ad litem during the CHINS proceedings; the timeliness issue was not raised but a termination order issued while the parent was still a minor was affirmed); *In re M.M.*, 733 N.E.2d 6, 11-14 (Ind. Ct. App. 2000) (holding there was sufficient evidence of all required elements, including that the child had been removed from the parent for at least six months, to support termination of minor mother's parental rights to her child), *abrogated on other grounds by In re G.P.*, 4 N.E.3d 1158 (Ind. 2014).

[16] The evidence showed that Child had been removed from the parents and under the supervision of DCS via relative placement for sixteen consecutive months at the time the petition for termination was filed. Therefore, the evidence supports

the juvenile court's conclusion that DCS proved by clear and convincing evidence that the requirements of section 31-35-2-4(b)(2)(A) were met.

## B. "Removal" from Father

Father also asserts that he was not the reason for Child's removal, and therefore, the trial court should not have based the termination in part on his lack of compliance with programs in which he should never have been required to participate.

Father repeatedly asserts that Mother was the sole reason for Child's removal and disavows any responsibility for Child's removal or continued placement outside the home. However, "[w]hen a child is removed from one parent and placed in foster care, the child is effectively removed from the custody of both parents." *In re B.D.J.*, 728 N.E.2d 195, 200 (Ind. Ct. App. 2000). A necessary corollary to a child being placed in relative or foster care is that there is no suitable parent with whom to place the child. Irrespective of Mother's failings, there was evidence that Father used drugs during Child's infancy, sometimes in the presence of Child. *See* Petitioner's Exhibit 3, Intake Officer's Report of Preliminary Inquiry and Investigation, attached as Exhibit A to Petition Requesting Authority to File a Formal Child in Need of Services Petition (stating a report was made in January 2011 that Mother and Father "would take [Child] in the room with them while they were smoking marijuana."). There was also evidence that while Child was an in-home CHINS, Father was subject to an Order of Participation with which he did not comply and that he was incarcerated as recently as three months before the Child was removed

from Mother's home. Father was not an appropriate person to have custody of Child, and therefore, he was also responsible for Child's removal and placement outside the home.

## C. Remedy of Conditions

[19] Finally, Father alleges that the sole reason Child was not placed with him when he was removed from Mother's care was because he was a minor. Since he has now attained the age of majority, Father claims DCS has failed to show that the conditions that resulted in Child's removal have not been remedied.

[20] As noted above, Father's minority was not the only condition resulting in Child's removal from his care and custody. Moreover, the statute focuses not only on the initial reason for removal but also on the reasons for continued placement outside the home. Ind. Code § 31-35-2-4(b)(2)(B)(i). After Father turned eighteen, he filed a motion seeking a change in Child's placement. The juvenile court was amenable to the idea, provided Father refrained from drug use and participated in visitation with Child pending a review hearing set a few months out. As noted by the guardian ad litem at the termination hearing, Father was unable to comply with those simple provisions for taking custody of his son. It was not Mother's actions, but Father's own drug use and failure to maintain contact with Child that were the reasons Child was not placed with him and instead continued in relative placement.

[21] In determining whether the conditions that led to removal will not be remedied, the juvenile court "must judge a parent's fitness to care for [his] child at the

time of the termination hearing and take into consideration evidence of changed conditions." *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.* (quotation omitted). Father was incarcerated at the time of the termination hearing, facing a probation revocation and new drug charges. He had shown no improvement during the CHINS and termination proceedings. His habitual patterns of conduct indicate that even if he is able to refrain from drugs for a short term, he inevitably slips back into using illegal substances. "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *In re L.S.*, 717 N.E.2d 204, 210 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*, 534 U.S. 1161 (2002).

[22] Such is the case here. Father has shown no willingness or ability to change the conduct that kept Child in relative placement and out of his own care. The trial court did not clearly err in concluding that the evidence shows no reasonable probability that Father's conduct will change.

# Conclusion

[23] To reiterate, we reverse a termination of parental rights only upon a showing of clear error, or error that leaves us with a definite and firm conviction that a

mistake has been made.  There is no such error here.  The judgment of the trial court terminating Father's parental rights is affirmed.

[24]     Affirmed.

Bailey, J., and Brown, J., concur.