**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 10 2014, 9:40 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**BRIAN J. MAY**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Office of Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF G.L. (minor child): | ) ) ) ) |
| G.W.L., III (Father), | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 71A03-1404-JT-141 ) |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable James N. Fox, Judge
Cause No. 71J01-1307-JT-57

**November 10, 2014**

**PYLE, Judge**

## STATEMENT OF THE CASE

G.W.L., III ("Father") appeals the involuntary termination of his parental rights to his child, G.W.L., IV. On appeal, Father claims that the Department of Child Services ("DCS") did not establish, by clear and convincing evidence, the elements required to terminate his parental rights. However, we do not reach the merits of this case because the probate court's order in this matter did not sufficiently set out its factual findings. Accordingly, we remand to the probate court to enter factual findings that conform to the requirements of the Indiana Trial Rules and precedent from this Court.

We remand.

## FACTS

G.W.L., IV was born on September 12, 2011 to Father and B.L. ("Mother"), who was a ward of the State herself at the time of G.W.L., IV's birth. Mother lived with G.W.L., IV in her own apartment as part of an Independent Living Program through DCS. In June 2012, DCS workers began having concerns about Mother's apartment. Specifically, during visits, DCS workers often found dirty diapers, moldy food, cigarette butts, and on one occasion, broken glass. Father was also visiting Mother at the apartment even though it was against the rules of the Independent Living Program.

At some point, Mother left the program housing and moved in with Father. The same unsanitary conditions that existed in Mother's previous residence reoccurred when

she moved in with Father. DCS removed the child on November 1, 2013, and filed a petition alleging that G.W.L., IV was a child in need of services ("CHINS").

On November 12, 2012, the probate court adjudicated G.W.L., IV as a CHINS and issued its dispositional order on December 12, 2012. The probate court's order required Father to visit his child on a regular basis, complete a psychological parenting evaluation and follow all recommendations, maintain a safe and stable home environment and a legal source of income, and participate in family therapy.

On August 19, 2013, DCS filed a petition to terminate Mother and Father's parental rights. DCS alleged that the parents would not remedy the conditions that resulted in the child's removal from their care or that the continuation of the parent-child relationship posed a threat to the well-being of the child. DCS also alleged that termination of the parent-child relationship was in the child's best interest. Mother eventually terminated her parental rights voluntarily.

The probate court held an evidentiary hearing on March 27, 2014 and in an order dated April 9, 2014, the probate court terminated Father's parental rights. The probate court concluded that Father would not remedy the conditions that led to the child's removal, that the continuation of the parent-child relationship posed a threat to the child's well-being, and that a satisfactory plan was in place for G.W.L., IV. The probate court did not make a specific conclusion regarding G.W.L., IV's best interests. Father now appeals.

DECISION

Although parental rights are of a constitutional dimension, the law allows for termination of these rights when parties are unable or unwilling to meet their responsibilities. *In re A.N.J.*, 690 N.E.2d 716, 720 (Ind. Ct. App. 1997). The purpose of termination of parental rights is not to punish parents but to protect children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*.

When DCS seeks to terminate parental rights pursuant to INDIANA CODE § 31-35-2-4(b)(2), it must plead and prove, in relevant part:

* * * *
(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside of the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has on two (2) separate occasions, been adjudicated a child in need of services.

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Because subsection (b)(2)(B) is written in the disjunctive, DCS need prove only one of the three elements by clear and convincing evidence. *See Bester v. Lake Cnty. Office of Family and Children*, 839 N.E.2d 143, 153 n.5 (Ind. 2005). These allegations must be established by clear and convincing evidence. *I.A.*, 934 N.E.2d at 1133. If the trial court

4

finds the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a).

In reviewing an order terminating parental rights, we will neither reweigh the evidence nor judge the credibility of witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). We consider only the evidence most favorable to the judgment. *Id*. Where the trial court has entered findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Id*. We must determine whether the evidence supports the findings and then whether the findings support the judgment. *Id*. We will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id*. A judgment is clearly erroneous if the findings do not support the conclusions or the conclusions do not support the judgment. *Id*. Where, as done here, the court has entered *sua sponte* findings, the "[s]ua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997); *see also* Ind. Trial Rule 52(D).

We do not reach the merits of this case because the probate court's factual findings are insufficient and hinder effective appellate review. The probate court's order is very similar to the order we remanded in *Parks v. Delaware Cnty. Dep't. of Child Servs*, 862 N.E.2d 1275 (Ind. Ct. App. 2007). There, this Court remanded an order terminating parental rights where the majority of the factual findings were a "mere recitation of testimony and witness opinions." *Id*. at 1279. Regarding the proper entry of findings of fact, we observed the following:

A court or an administrative agency does not find something to be a fact by merely reciting that a witness testified to X, Y, or Z. In other words, findings which indicate that the testimony or evidence was this or the other are not findings of fact. Instead, a finding of fact must indicate, not what someone said is true, but what is *determined to be true*, for that is the trier of fact's duty. The trier of fact must adopt the testimony of the witness before the "finding" may be considered a finding of fact. Furthermore, Indiana Trial Rule 52(A) provides that when a trial court enters findings upon its own motion, it shall find the facts specially and state its conclusions thereon.

*Id.* (internal citations and quotation marks omitted) (emphasis added).

Here, the probate court started its order by outlining the requirements to terminate Father's parental rights. However, most of the factual findings begin with "Father testified," "witnesses testified," or "The Court credits page 1 of [DCS] exhibit." (App. 36-39). We have recently found that a trial court did not err with references to evidence in its factual findings when the findings also contained "thoughtful findings that flow from the evidence." *S.L. v. Indiana Dep't. of Child Servs.*, 997 N.E.2d 1114, 1122 (Ind. Ct. App. 2013). Unfortunately, the probate court's order does not approach what we approved in *S.L.*

A trial court is not statutorily required to enter findings of fact and conclusions thereon unless requested by the parties. *Parks*, 862 N.E.2d at 1281. However, considering the seriousness and permanency of terminating a parent's rights, "once the trial court walks down the path of making findings, it is bound under Indiana Trial Rule 52(A) to make findings that support the judgment." *Id.* Accordingly, we remand this case to the probate court with instructions to enter proper findings of fact.

Remanded.

NAJAM, J., and BAILEY, J., concur.