## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 15 2017, 9:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael J. Kyle
Baldwin Kyle & Kamish
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of:

N.D. *(Minor Child)*

and

J.D. *(Father)*,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

February 15, 2017

Court of Appeals Case No.
41A01-1605-JT-1036

Appeal from the Johnson Circuit Court

The Honorable K. Mark Loyd, Judge

The Honorable Andrew Roesener, Magistrate

Trial Court Cause No.
41C01-1510-JT-20

**Robb, Judge.**

# Case Summary and Issue

[1] J.D. ("Father") appeals the juvenile court's termination of his parental rights to his child N.D. ("Child"), raising the sole restated issue of whether the juvenile court's termination order is supported by clear and convincing evidence. Concluding the termination order is not clearly erroneous, we affirm.

# Facts and Procedural History

[2] Child was born on August 31, 2012.[1] In May 2014, the Indiana Department of Child Services ("DCS") received a report from Child's family members who felt Father endangered Child's well-being. Father is mentally ill and family members became concerned with his erratic and aggressive behavior. On May 29, 2014, DCS filed a petition alleging Child was a child in need of services ("CHINS") due to Father's behavior and the juvenile court ordered Child be removed from Father's care. Father later admitted the allegations set forth in DCS' petition and the juvenile court adjudicated Child as a CHINS. Father agreed to certain dispositional goals, including participation in home-based case management, exercising regular parenting time, and a mental health assessment. Child's permanency plan was a concurrent plan of reunification and adoption.

---

[1] Child's mother previously consented to Child's adoption and is not a party to this appeal.

[3] On December 2, 2014, Father underwent a psychological evaluation with Dr. Linda McIntire. As a part of the evaluation, Father submitted answers for a Child Abuse Potential Inventory and the results showed Father is at an extremely high risk of abusing children. In addition, Father was diagnosed with several disorders, including Schizoaffective Disorder, Borderline Intellectual Functioning, and Adult Antisocial Behavior. Dr. McIntire recommended Father participate in a partial hospitalization program providing intensive oversight, regularly consult a psychiatrist and follow all recommendations, abstain from illicit drugs, abstain from contacting Child, and participate in case management and parenting education services. Father did not complete his dispositional goals. On April 12, 2016, the juvenile court entered its findings of fact and conclusions thereon terminating Father's parental rights. This appeal ensued. Additional facts will be added as necessary.

# Discussion and Decision

## I. Standard of Review

[4] When we review a termination of parental rights, we neither weigh the evidence nor judge witness credibility and we consider only the evidence and reasonable inferences most favorable to the judgment. *In re C.G.*, 954 N.E.2d 910, 923 (Ind. 2011). Where, as here, the juvenile court entered findings of fact and conclusions, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the

findings support the judgment. *Id.* "We will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. Clear error is that which leaves us with a definite and firm conviction that a mistake has been made." *S.L. v. Ind. Dep't of Child Servs.*, 997 N.E.2d 1114, 1123 (Ind. Ct. App. 2013) (citation omitted).

## II. Termination Order

Father argues the juvenile court clearly erred in terminating his parental rights. Specifically, he claims his failure to complete his dispositional goals was due to DCS not providing the proper services to allow him to reunify with Child and therefore DCS failed to present clear and convincing evidence establishing a reasonable probability the conditions resulting in Child's removal will not be remedied.[2] The crux of Father's position is Dr. McIntire recommended he participate in a partial hospitalization program, which he claims was impossible to complete due to DCS' inability to offer such a service. Father's argument fails.

"[T]he involuntary termination of parental rights is an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed . . . ." *In re K.W.*, 12 N.E.3d 241, 249 (Ind. 2014) (alteration in original)

---

[2] The State first asserts Father has waived his argument for failing to present a cogent argument. Although Father does not cite to any legal authority directly supporting his position, we conclude Father's argument is sufficient for us to address the issue on appeal. We take this opportunity, however, to address the State's brief. The brief would be more effective if the State focused its arguments on the dispositive issues presented to the court instead of dedicating significant time detailing the shortcomings of Father's brief.

(citation omitted). Indiana Code section 31-35-2-4(b)(2) sets out what must be proven in order to terminate parental rights, which we provide in relevant part:

> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child[; and]
>
> * * *
>
> (C) that termination is in the best interests of the child. . . .

The State must prove each element by clear and convincing evidence. Ind. Code § 31-34-12-2; *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009). If a juvenile court determines the allegations of the petition are true, then the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[7]     At the outset, we note Father's argument appears to only question whether DCS' efforts to reunify Father with Child were reasonable. Indiana Code section 31-34-21-5.5 makes clear DCS is generally required to make reasonable efforts to preserve and reunify families during *CHINS proceedings*. However, this "CHINS provision is not a requisite element of our parental rights termination statute, and a failure to provide services," reasonable or not, "does not serve as a basis on which to directly attack a termination order as contrary to law." *In re*

*H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009) (addressing a father's argument following termination of his parental rights that he was unable to participate in services because the county jails where he was incarcerated did not offer those services).

[8] Nonetheless, we note Father was to complete a mental health assessment and follow all recommendations. Following a psychological evaluation, Dr. McIntire recommended Father participate in a partial hospitalization program and other services. There is no dispute DCS did not have a contract with a provider who could offer Father a partial hospitalization program. Rather than completely give up on providing Father with this service, DCS determined Father could be provided this service if he applied for and received Medicaid. DCS informed Father of this and encouraged him to fill out the necessary documentation, but Father failed to do so. We see no shortcoming in DCS' provision of services and conclude the State presented sufficient evidence to establish a reasonable probability the conditions leading to Child's removal will not be remedied.[3]

[9] We further note Father does not challenge any of the remaining portions of the juvenile court's order. Nonetheless, Indiana Code section 31-35-2-4(b)(2)(B) is

---

[3] We further note, even if we were to ignore the juvenile court's finding Father failed to participate in a partial hospitalization program, the juvenile court's findings establish Father did not take appropriate steps to remedy his mental health issues. As the juvenile court found, "the bulk, if not the entirety, of the evidence establishes Father has essentially done nothing that has been asked of him . . . ." Appellant's Appendix, Volume II, at 19.

written in the disjunctive and requires only one element in that subsection to be proven to support termination of parental rights. *See In re I.A.*, 903 N.E.2d 146, 153 (Ind. Ct. App. 2009). Even assuming the State failed to prove a reasonable probability the conditions resulting in in Child's removal will not be remedied, the juvenile court's findings and record establish a reasonable probability the continuation of the parent-child relationship poses a threat to Child's well-being. *See* Ind. Code § 31-35-2-4(b)(2)(B)(ii). For this reason as well, the juvenile court's termination order is supported by clear and convincing evidence. We conclude the State proved the allegations set forth in its petition and the trial court did not clearly err in terminating Father's parental rights.

# Conclusion

DCS established by clear and convincing evidence the elements necessary to support the termination of Father's parental rights. The judgment of the juvenile court terminating Father's parental rights is affirmed.

Affirmed.

Kirsch, J., and Barnes, J., concur.