# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

Frederick A. Turner
Bloomington, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In Re the Matter of the Termination of Parental Rights of:

P.O.M. *(Minor Child)*

and

J.M. *(Mother)*,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 20, 2018

Court of Appeals Case No.
18A-JT-301

Appeal from the Monroe Circuit Court

The Honorable Frances G. Hill, Judge

Trial Court Cause No.
53C06-1704-JT-350

**Robb, Judge.**

# Case Summary and Issues

[1] J.M. ("Mother") appeals the juvenile court's termination of her parental rights to P.O.M. ("Child"), raising two issues for our review which we restate as: (1) whether the trial court abused its discretion in denying Mother's motion for a continuance; and (2) whether the juvenile court made sufficient findings to support the involuntary termination of her parental rights. Concluding the juvenile court did not abuse its discretion in denying Mother's motion for a continuance and the findings were sufficient to support the involuntary termination of Mother's rights, we affirm.

# Facts and Procedural History

[2] On three separate occasions in April 2016, Child, who was then not yet three years old, was found wandering the streets unsupervised.[1] And, when Mother picked Child up from the police station following the last occasion on April 24, she appeared to be under the influence of an intoxicating substance. Mother refused a drug screen or to engage in a safety plan. A few days later, on April 26, the Indiana Department of Child Services ("DCS") filed a petition alleging Child was a child in need of services ("CHINS"), citing a lack of supervision and Mother's ongoing drug use. Mother subsequently tested positive for cocaine on May 4 and tested positive for methamphetamine on June 15. The

---

[1] The biological father of the Child is unknown and was not subject to this litigation.

juvenile court adjudicated Child a CHINS on June 20 and Child was placed in foster care.

[3] On July 18, the juvenile court ordered Mother to comply with twenty-four directives to combat substance abuse and mental health issues. Among other things, these directives required Mother to:

> maintain contact with DCS; maintain suitable safe, and stable housing; maintain a stable source of income; not use, consume, trade or sell any illegal controlled substances; obey the law; complete Parent/Family Function Assessment and complete services as recommended in the assessment; complete substance abuse assessment and complete recommendations made in the assessment; submit to weekly drug screens; and attend all scheduled visitations with the Child.

Appellant's Appendix, Volume 2 at 33-34.

[4] The juvenile court found Mother was "generally" complying with services at a review hearing on October 20, 2016, but she had "not yet enhanced her ability to fulfill her parental obligations[,]" and she had failed to take drug screens on August 11, September 9, and September 23. Index of Exhibits at 24-27.

[5] The juvenile court conducted a permanency hearing on March 28, 2017. There, the court found that although Mother was generally loving during her visits with Child, the police had to be called on one occasion in December 2016 because "Mother screamed for 10 minutes holding the Child and refused to give the Child to the visitation supervisor[.]" Appellant's App., Vol. 2 at 34. The court further found that Mother "no showed" for almost half her scheduled

drug screens from December 2016 through February 2017.  The court modified the permanency plan from reunification to adoption due to Mother's drug use and inability to make progress toward mental health stability.  *Id*.  DCS filed a verified petition for the termination of the parent-child relationship ("TPR") between Mother and Child on April 19.

[6] In Mother's absence, the juvenile court held another review hearing on June 20, 2017.  Mother had continued to miss drug screens and had been arrested for possession of methamphetamine and a syringe just a week prior.  Mother's participation in mental health treatment was "not . . . consistent[,]" and Mother's therapist reported "no progress was made in April 2017 and Mother was irrational and not responsive to de-escalation techniques."  Index of Exhibits at 36.

[7] The juvenile court conducted a termination hearing on August 2, 2017.  Mother requested a continuance at the beginning of the hearing, but the juvenile court denied her motion.  After hearing the evidence, the court terminated Mother's parental rights through written findings of fact and conclusions of law issued on September 1, 2017, concluding:

> The DCS has proven by a preponderance of evidence[2] as follows:

---

[2] On February 2, 2018, the juvenile court sua sponte issued a Notice and Correction of Scrivener's Error which stated:

26. The Child has been removed from the home for more than 6 months under a dispositional decree.

27. There is a reasonable probability that the conditions which resulted in the removal of Child from the home will not be remedied and that the continuation of the parent-child relationship poses a threat to the wellbeing of the Child. Although there is no doubt that Mother has love for the Child, Mother did not express a sincere understanding of the safety needs of the Child or her responsibilities to affectively [sic] address or avoid the 3 occasions when the Child was found wondering [sic] outside of the home unsupervised as a toddler, Mother continued to use illegal substances throughout the case even though she was offered and received significant drug treatment services, Mother did not fully utilize or benefit from the services to enable her to obtain stable emotional and mental health necessary to the care of the Child, despite extensive mental health treatment Mother continued to exhibit irrational thinking and did not make significant progress in necessary goals of learning to regulate her emotions and distress tolerance, Mother stopped all services and visitation with the Child for a period of time while this termination petition was pending by fleeing to Michigan to avoid a drug arrest warrant in Indiana, and Mother's history of near evictions and fleeing to Michigan and recent criminal acts do not evince housing or social stability needed by the Child.

---

… an error was made in stating that the DCS has proven the following by a "preponderance of the evidence." Judge Hill decided the case using the standard of "clear and convincing evidence," but by scrivener's error, cited the incorrect standard of "preponderance of the evidence" in the Ruling.

Appellant's App., Vol. 2 at 84.

28. Termination is in the best interest of the Child. The Child entered foster care with developmental delays and behavioral issues. The Child has participated in therapy and has benefited from the Nurturing Heart Program implemented by the foster parents to address behavioral issues. Progress has been made in these areas and the Child has benefited from the stable and consistent environment provided by the foster parents. The Mother's emotionalism, unresolved mental health issues, and continued drug use will not provide minimal safety and stability for the Child. Despite some periods of sobriety and Mother's love for the Child, the evidence does not show that Mother has the motivation or ability to implement the changes necessary to provide a safe and stable environment for the Child.

29. DCS has a satisfactory plan for the Child. The current foster parents that the Child has lived with during the entire period of this care are willing, able and hopeful to adopt the Child.

The Petition for Involuntary Termination of Parental Rights has been proven and should be granted.

Appellant's App., Vol. 2 at 41-42. Mother now appeals.

# Discussion and Decision

## I. Motion to Continue

First, Mother argues the juvenile court erred in denying her verbal motion for a continuance. We review a trial court's decision to grant or deny a motion to continue for abuse of discretion. *In re K.W.*, 12 N.E.3d 241, 243-44 (Ind. 2014).

> An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion, but no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial.

*Id.* (internal citation and quotations omitted). "The party seeking a continuance must show that he or she is free from fault[,]" and there is a "strong presumption that the trial court properly exercised its discretion." *In re B.H.*, 44 N.E.3d 745, 748 (Ind. Ct. App. 2015), *trans. denied*.

[9] At the beginning of the TPR hearing, Mother requested a continuance, with her counsel stating:

> [Mother] would like to, she's had a lot of things going on in her life to where she hasn't been able to meet the requirements that have been set out previously, but she believes she can do that now. And she's asked to set this out such that she can complete a course of treatment, to put her in a better position in front of this court.

Transcript of Evidence, Volume 1 at 4. DCS objected, arguing that the case had been ongoing for "over 15 months[,]" and "Mother's has [sic] had plenty of time to show her motivation and determination, and efforts at reunification, she's failed to do so as of today." *Id*. at 5. The juvenile court denied Mother's motion before proceeding to hold the hearing that ultimately resulted in termination of her parental rights.

[10]     On appeal, Mother argues that she needed more time to comply with the dispositional order and that the juvenile court's denial of her motion amounted to an abuse of discretion. In support of her argument, Mother cites the juvenile court's Conclusion on Permanency in its March 31, 2017 Order:

> Although the hearing was helpful for the court to appreciate the efforts of Mother, the court concludes that reunification efforts have not been successful. Mother's efforts to treat her anxiety and depression have not been consistent and she has shown only minimal improvement. Mother's mental health stability is necessary to safely supervise and parent her child. Mother's continued and significant use of Methamphetamines at least through February 2017 does not show a commitment toward reunification with the child. The fact that Mother was continuing to use even while she was reportedly attending drug treatment is contrary to a commitment to reunification. The permanency plan is changed to Termination of Parental rights. *However, termination proceedings can be continued if Mother demonstrates a clear and consistent commitment to maintain sobriety and attend and benefit from mental health treatment*.

Index of Exhibits at 30-31 (emphasis added). Mother further argues that she "has shown good cause" for the termination hearing to be continued because, as her counsel explained, "she was in a better position and able to address the mental health concerns and the substance abuse." Brief of Appellant-Mother at 11.

[11]     As opposed to demonstrating the type of "clear and consistent commitment" which may have warranted a continuance, Mother's situation continued to decline. Index of Exhibits at 31. Between the date of the juvenile court's offer

of a continuance and the denial of her subsequent motion, Mother had continued to miss drug screens and was arrested for possession of methamphetamine and a syringe. Moreover, the juvenile court found in its June 23 Review of Permanency Plan Order that Mother's participation in mental health treatment "had not been consistent" and she had made "no progress . . . in April 2017[.]" Index of Exhibits at 36. Mindful of the "strong presumption" in favor of the juvenile court's ruling, *In re B.H.*, 44 N.E.3d at 748, and Mother's failure to display a "clear and consistent commitment[,]" Index of Exhibits at 31, we conclude the juvenile court did not abuse its discretion in denying Mother's motion for a continuance.

# II. Termination Order

[12] Next, Mother challenges the underlying termination order. A parent's interest in the care, custody, and control of his child is "perhaps the oldest of the fundamental liberty interests[,]" *Bester v. Lake Cty.. OFC*, 839 N.E.2d 143, 147 (Ind. 2005), and these rights are protected by the Fourteenth Amendment to the United States Constitution, *In re D.D.*, 804 N.E.2d 258, 264 (Ind. Ct. App. 2004), *trans. denied*. Although these rights are constitutionally protected, they are not without limitation and the law provides for the termination of the parent-child relationship when parents are unable or unwilling to meet their parental responsibilities. *In re R.H.*, 892 N.E.2d 144, 149 (Ind. Ct. App. 2008).

# A. Standard of Review

[13] When reviewing the termination of parental rights, we do not reweigh the evidence or judge the credibility of witnesses. *In re D.D.,* 804 N.E.2d at 265. Rather, we only consider evidence, and reasonable inferences therefrom, most favorable to the judgment, *id.*, and we will only set aside the court's judgment terminating a parent-child relationship when it is clearly erroneous, *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*, 534 U.S. 1161 (2002). The trial court abuses its discretion only when its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

[14] As required by Indiana Code section 31-35-2-8, the juvenile court entered findings of fact and conclusions thereon when terminating Mother's parental rights. Accordingly, we apply a two-tiered standard of review. *Bester*, 839 N.E.2d at 147. We must first determine whether the evidence supports the findings; then we determine whether the findings support the judgment. *Id.* Findings will only be set aside if they are clearly erroneous and findings are clearly erroneous only "when the record contains no facts to support them either directly or by inference." *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind. 1997).

# II. Termination of Mother's Parental Rights

[15] To terminate parental rights, Indiana Code section 31-35-2-4(b)(2) requires the State to prove, in relevant part:

> (B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

The State must prove the foregoing elements by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016). However, because subsection (b)(2)(B) is written in the disjunctive, the juvenile court need only find one of the three elements by clear and convincing evidence. *See Castro v. State Office of Family & Children*, 842 N.E.2d 367, 373 (Ind. Ct. App. 2006), *trans. denied*.

[16] Here, the juvenile court found that the State proved both subsections (i) and (ii) of Indiana Code section 31-35-2-4(b)(2)(B) by clear and convincing evidence.[3]

---

[3] Initially, Mother also argued the juvenile court had applied an incorrect burden of proof and that its sua sponte order correcting such mistake was "of no moment in this appeal." Br. of Appellant at 10 n.1.

Mother now *attempts* to challenge the sufficiency of the evidence to support both conclusions.[4]

## A. Sufficiency of the Juvenile Court's Findings

[17] Mother argues the juvenile court failed to provide an explanation as to:

> how the findings support a conclusion that there is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied or that is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

Br. of Appellant at 12. Mother, however, fails to support this perfunctory assertion with cogent reasoning or citation to authority. As such, Mother has waived this issue for our review. Ind. Appellate Rule 46(A)(8) (providing that the argument section of the appellant's brief must "contain the contentions of the appellant on the issues presented, supported by cogent reasoning[,]" along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts under review). Because these perfunctory assertions are

---

However, "[a]fter reviewing both Briefs and the law," Mother has since withdrawn this argument. Reply Brief of Appellant at 5.

[4] Mother has not contested the juvenile court's conclusion that termination is in the best interests of the Child or that there is a satisfactory plan for the care and treatment of the Child. *See* Appellant's App., Vol. 2 at 42, ¶¶ 28-29. Accordingly, Mother has waived any argument as to these conclusions. *A.D.S. v. Indiana DCS*, 987 N.E.2d 1150, 1156 n.4 (Ind. Ct. App. 2013) (explaining that a parent's failure to support arguments with cogent reasoning results in waiver on appeal), *trans. denied*.

the only conclusions of law Mother so much as mentions in her brief, she fails to specifically challenge any of the juvenile court's conclusions. The failure to challenge the juvenile court's legal conclusions results in the waiver of any argument as to the sufficiency of such findings. *A.D.S.*, 987 N.E.2d at 1156 n.4. Therefore, to the extent Mother challenges the sufficiency of the juvenile court's findings of fact, she has also waived these arguments for failure to advance a cogent argument. *Id.*

[18] Given our preference for resolving a case on its merits, we will nevertheless endeavor to address Mother's arguments—at least to the extent they can be understood. Mother challenges ten of the juvenile court's findings of fact, alleging the findings are "nothing but a recitation of the evidence[,]" and that the underlying order "lacks the specificity, the precision, and the direction necessary for this Court to ensure that DCS has proven each element by clear and convincing evidence." Br. of Appellant at 12-13.

[19] "A court or an administrative agency does not find something to be a fact by merely reciting that a witness testified to X, Y, or Z." *S.L. v. Indiana Dep't of Child Servs.*, 997 N.E.2d 1114, 1122 (Ind. Ct. App. 2013). Instead, "a finding of fact must indicate, not what someone said is true, but what is determined to be true, for that is the trier of fact's duty." *Id*. "The trier of fact must adopt the testimony of the witness before the 'finding' may be considered a finding of fact." *Id*.

[20] Specifically, Mother argues:

For example, in its Finding 12, the Trial Court notes that "Mother's substance abuse condition began to deteriorate during her work with Therapist Terry in late spring, 2017."

Br. of Appellant at 12 (citing Appellant's App., Vol. 2 at 36, ¶ 12). Mother never explains what, exactly, this is an "example" of, but it appears from the context of her argument that she is arguing the finding is an example of the juvenile court merely reciting testimony without making a finding. *Id.* Because Finding 12 indicates what the juvenile court determined to be true, however, it is not merely a recitation of testimony and we do not view it as such.

[21] Next, Mother contends "Findings 15-17 are basically a recap of FCM Sarah Santoro's testimony." Br. of Appellant at 12. These findings state:

15. **Family Case Manager Sarah Santoro/Instability** Family Case Manager Sarah Santoro (hereafter "FCM Santoro") was assigned to the Child's case in May 2016. The Child was not returned to Mother during the period of the CHINS case because of Mother's non-compliance with services and safety issues for the Child. Mother did not demonstrate sobriety or emotional stability necessary to the Child's safety. Mother disagreed with her mental health treatment. Mother did not want to participate in Dialectical Behavior Treatment (DBT) and attended only a few sessions. Mother lacked motivation in mental health treatment and to implement change in her daily life. Mother exhibited the emotional instability in the December 2016 screaming incident (see Finding 6) with the Child present and in a Family and Team Case Management Meeting in which she escalated inappropriately in April or May 2017. Mother obtaining/maintaining mental stability would help her

obtain sobriety. Mother's relationship with her wife was unstable. Mother's housing was unstable, given the history of near evictions and Mother's departure to Michigan.

16. **Failure to Supervise**. FCM Santoro addressed the issue with Mother of the Child being found unsupervised outside of the home at age 2 or 3. Mother believed a lock would fix the problem. Mother did not understand that the lock was not the extent of the problem and didn't seem to appreciate the need for close supervision. Mother indicated the problem was the nanny. Mother did not express a plan for a better caregiver. The judgment of CHINS was based, in part, on the Child being found outside of the home on 3 separate occasions.

17. **Illegal Drug Use/Mother's Flight to Michigan to Avoid Warrant/Abandonment of Child**. FCM Santoro assessed that Mother did not successfully treat Mother's drug use that caused, in part, the CHINS case. Mother was observed impaired on April 24, 2016 when the Child was found unsupervised outside of Mother's home and was taken into protective care. Mother tested positive for Cocaine and then Methamphetamine in May and June 2016 within about 2 months of the removal of the Child from Mother's care. Mother was offered a drug assessment, Recovery Coaching, therapy, and random drug screens. Mother did participate in a Mapping Program, Recovery Coaching and therapy. Mother had periods of sobriety but did not maintain. Between December 2016 and February 2017 Mother showed up for only half of her drug screens. Mother admitted using Methamphetamine in February 2017. Mother did not screen positive for illegal drugs for a period of time after that but did screen positive for alcohol 3 times. Alcohol use is considered a relapse for addiction. Mother was

utilizing services in May 2017; however from the end of May through July 2017, Mother did not participate in drug screens or services. At the end of May 2017, Mother's wife notified DCS that Mother was arrested in Marion County for possession of Methamphetamine. Mother was charged on June 10, 2017 in Marion County for unlawful possession of a syringe, possession of Methamphetamine, Possession of Paraphernalia in cause number 49G25-F6-021560. Exhibit 10. Mother did not appear for a hearing in that cause and a warrant was issued for her arrest on June 13, 2017. FCM Santoro spoke to Mother and told her to turn herself in on the active warrant. Mother did not do so. The number of Mother's visits were reduced because the Child was having difficulty at Head Start and exhibiting aggression with other children after visits. Mother's last visit with the Child was in June, 2017. At some point in June 2017, Mother left Indiana to avoid the warrant and Mother stayed in Michigan where she has family. Mother contacted DCS a few weeks before this hearing to advice [sic] of her location in Michigan where documents in her cases could be sent to her. Mother inquired about services in Michigan but did not ask for DCS help. Mother was manipulative with the case manager and the phone call was not productive.

Appellant's App., Vol. 2 at 37-39.

[22] There is no question that Findings 15-17 heavily rely on the testimony of Santoro, but the findings also clearly indicate what the juvenile court determined to be true. And, so long as findings indicate a determination, we will not set them aside unless the record contains no facts to support them either directly or by inference. *Yanoff,* 688 N.E.2d at 1262. Santoro's testimony clearly supports these findings and they are therefore proper.

Finally, Mother argues "Findings 18-24 merely discuss and quote witnesses without adopting the testimony or making a finding of fact." Br. of Appellant at 12. These findings state:

18.    CASA Mavis Anderson. Mavis Anderson is the Court Appointed Special Advocate (CASA) for the Child. CASA Anderson was employed as a licensed clinical social worker for 30 years, working primarily in hospitals. She is now retired. The CASA spent about 100 hours working on this case.

19.    The CASA's observations of Mother and Child were that Mother was normally affectionate and appropriate with the Child, although she could be emotional and increased emotionalism from Mother was not good for the Child. The CASA observed a visit of Mother and Child at the park in which Mother got very angry at the CASA in the presence of the Child. Mother was loud and the Child was clearly upset.

20.    The CASA believes that Mother's relationship with her wife is unstable. Mother was at the Wheeler Mission because of reported domestic violence with her wife. Mother told CASA she wanted to return to go home to reconnect with her wife.

21.    It is the opinion of the CASA that termination of Mother's parental rights is in the best interest of the Child because Mother cannot provide a safe home for the child because of her drug use and mental health issues. The CASA opined that DCS services have been appropriate to meet Mother's needs, but Mother has made no progress. Mother gets upset unless you tell her what she wants to hear and Mother doesn't want to be confronted. The

CASA opined that Mother has not been able to "get off of drugs", she lacks mental health stability, and she lacks a stable support system.

22. Child. When the Child went into foster care 15 months ago she was developmentally delayed and exhibited behavioral problems. The Child has been in the same foster home with Mr. and Mrs. Samuels for the entire 15-month period. The foster parents attended Nurturing Heart Programming to deal with the Child's behavioral issues. The Child also received therapy to address her behavioral issues. The Child's behavior has improved while in foster care. The Child is bonded to the foster parents and to the other siblings in the foster home. The foster parents are willing to adopt the Child if she is free for adoption.

23. The CASA observed and opined that the Child's speech is improving, she is progressing in school (Head Start), she is more confident and happy, and she is bonded to the foster parents.

24. The Child's Head Start teacher Beth Harris observed that the Child was quiet, "behind" and lacked verbal and academic skills when she began Head Start after removal from Mother; however, she is now an outgoing, happy, child capable of interacting with adults and other children. The Child's language, math and social emotionality skills jumped 2 points in the last quarter.

Appellant's App., Vol. 2 at 39-40.

[24] With the exceptions of Findings 18 and 22, which clearly state the juvenile court's determination of fact, the remaining findings do, at least to some degree,

recite the testimony of witness. Nevertheless, we have explained that a juvenile court does not err with references to evidence in its factual findings so long as the findings also contain "thoughtful findings that flow from the evidence." *S.L.*, 997 N.E.2d at 1122. That is the case here. All but ten of the findings are left unchallenged and are thus accepted as true. *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (explaining that unchallenged trial court findings were accepted as true). Furthermore, the juvenile court's conclusions of law regarding subsections (i) and (ii) of Indiana Code section 31-35-2-4(b)(2), *see* Appellant's App., Vol. 2 at 41-42, ¶¶ 27-28, include additional findings which reflect the court's determinations of fact.

In sum, although the termination order could have been more specific, because the juvenile court clearly identifies the reasons for terminating Mother's parental rights, we find no error.

# Conclusion

Concluding the juvenile court did not abuse its discretion in denying Mother's motion for a continuance and the findings were sufficient to support the involuntary termination of Mother's rights, we affirm.

Affirmed.

Riley, J., and Kirsch, J., concur.