## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 31 2017, 9:39 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny, Hahn, Denman & Nix, L.L.P.
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of: La.H., Le.H., Lo.H., Ma.H., S.W., W.H., and Me.H. *(Minor Children)*, *Children in Need of Services*

and

M.H. *(Father)*,

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

May 31, 2017

Court of Appeals Case No. 90A02-1609-JC-2135

Appeal from the Wells Circuit Court

The Honorable Kenton W. Kiracofe, Judge

Trial Court Cause Nos.
90C01-1603-JC-15
90C01-1603-JC-16
90C01-1603-JC-17
90C01-1603-JC-18
90C01-1603-JC-20
90C01-1603-JC-21
90C01-1603-JC-22

**Robb, Judge.**

# Case Summary and Issue

[1] M.H. ("Father") appeals the juvenile court's adjudication of his seven children ("Children") as children in need of services ("CHINS"). Father raises four issues on appeal, which we consolidate and restate as a single issue: whether the juvenile court's CHINS determination is clearly erroneous. Concluding the juvenile court's CHINS determination is not clearly erroneous, we affirm.

# Facts and Procedural History

[2] Father and R.H. ("Mother")[1] are the parents of six children, ten-year-old Ma.H., eight-year-old Le.H, seven-year-old Lo.H., five-year-old W.H., three-year-old La.H., and one-year-old Me.H. Mother also has two children from a prior relationship, eighteen-year-old R.W. and fifteen-year-old S.W. S.W. requires the assistance of a wheelchair and is unable to verbally communicate due to cerebral palsy.

[3] On March 28, 2016, the Indiana Department of Child Services ("DCS") received a report alleging Father had sexually abused his stepdaughter, R.W., multiple times throughout her childhood. One week prior to the DCS receiving that report, then seventeen-year-old R.W. left home without permission and

---

[1] Mother does not participate in this appeal.

began residing with her maternal aunt and uncle. R.W. turned eighteen on the same day the DCS began its investigation.

[4] In response to the report and allegations, Wendy Garrett, a DCS Family Case Manager, visited Mother and Father's home. Father answered the door but refused to permit Garrett to enter the home. Mother and Father refused to cooperate with the investigation at that time.

[5] Following an interview with R.W. concerning her allegations of sexual abuse, the DCS removed the Children from the home and placed them with their maternal aunt and uncle. While removing the Children, Garrett observed the Children had "incredibly poor hygiene" and noted the Children's hair was "matted." Transcript, Volume II at 16. Garrett further observed Me.H.'s diaper was "literally falling off, leaking." *Id.* As to the condition of the home, Garrett described it as "deplorable" and "unsanitary." *Id.* Garrett observed food, debris, and trash littering the floor of the home, a cluttered kitchen filled with dirty dishes, and piles of soiled clothing throughout the home. Garrett also noted the home did not appear to have a shower or access to water except through a hose brought in from outside the home. There also appeared to be structural issues with the home with portions of the ceiling collapsing over the Children's sleeping space. Garrett was not permitted to view the upstairs area because it "wasn't anything that had been worked on." *Id.* at 19.

[6] On March 31, 2016, the DCS filed verified petitions alleging each child to be a CHINS. The DCS later moved to dismiss the CHINS petition as to R.W.

because she reached the age of eighteen. Mother and Father denied the allegations contained in the verified petitions.

[7] On June 10, 2016, the juvenile court held a fact-finding hearing at which R.W. testified concerning her allegations of sexual abuse. R.W. testified the sexual abuse began when she was a young girl. During one instance, R.W. stated Father called her into the bedroom of their home. When she entered the room, he pulled her on top of him and put his hands down her pants. R.W. did not remember how old she was when this incident occurred. During another instance when she was about twelve years old, R.W. awoke on the living room couch and Father was on top of her. R.W. stated Father's penis touched her vagina. Father told R.W. not to tell anyone or he would do it again. R.W. attempted to speak to Mother about the incident but was too embarrassed to do so. When R.W. was about thirteen years old, Father told R.W. to take water to their horses in the barn and insisted on coming with her. R.W. stated she knew what Father was going to do. In the barn, Father ordered R.W. to lay on a bale of hay and pulled his pants down. Father then inserted his fingers into R.W.'s vagina. Father also inserted his penis into her vagina. R.W. stated the sexual abuse stopped when she was about fifteen or sixteen years old.

[8] R.W. testified she did not believe Father has abused any of her siblings, although she worried it may happen. She also stated that when she lived in the home, she was responsible for helping Mother and Father with the other Children, cleaning the house, and feeding and bathing S.W. R.W. also thought Father punished S.W. with unnecessary force. Occasionally, S.W. would cry

uncontrollably and the family struggled to calm her down. Father used to spank her over and over in an attempt to make her stop, but she would not. Mother would cry and tell Father "she's not going to stop crying if [you] just keep[] beating her." *Id.* at 42.

[9] On June 11, 2016, the juvenile court issued its order which included its findings of fact and conclusions thereon. The juvenile court found R.W.'s testimony and allegations to be true and adjudicated all seven Children as CHINS.[2] In addition to the sexual abuse of R.W., the juvenile court also found the Children to be CHINS due to the poor condition of the home, the fact Father remained in the home after R.W.'s allegations came to light, and the fact R.W., who provided care and supervision for the Children, was no longer living in the home. The juvenile court ordered the Children to remain in relative placement. On August 18, 2016, the juvenile court held a dispositional hearing at which it adopted the DCS' recommendations to have Mother and Father participate in services including home based counseling, a parental assessment, random drug screens, and a psychological evaluation. Father was also ordered to complete a substance abuse assessment and sex offender treatment program. Father now appeals. Additional facts will be added as necessary.

---

[2] R.W. was not adjudicated as a CHINS.

# Discussion and Decision

## I. Standard of Review

When reviewing a juvenile court's CHINS determination, we neither reweigh the evidence nor reassess witness credibility. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). We consider only the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.*

Where, as here, the juvenile court enters findings of fact and conclusions sua sponte following the fact-finding hearing, we apply a two-tiered standard of review to the issues covered by the findings: (1) we determine whether the evidence supports the findings, and (2) whether the findings support the judgment. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). We will reverse only upon a showing the court's decision was clearly erroneous. *In re K.D.*, 962 N.E.2d at 1253. A finding of fact is clearly erroneous if the record lacks evidence, or reasonable inferences from the evidence, to support it. *In re Adoption of A.S.*, 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), *trans. denied*. The judgment is clearly erroneous if we are left with a "definite and firm conviction that a mistake has been made." *In re S.L.*, 997 N.E.2d 1114, 1123 (Ind. Ct. App. 2013).

# II. CHINS Determination

[12] Father contends the juvenile court's judgment adjudicating the Children as CHINS is clearly erroneous. The juvenile court adjudicated the Children as CHINS under Indiana Code section 31-34-1-1,[3] which provides,

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
>> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>>
>> (2) the child needs care, treatment, or rehabilitation that:
>>
>>> (A) the child is not receiving; and
>>>
>>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

In other words, the statute requires the State to prove three basic elements: (1) the parent's actions or inactions have seriously endangered the children, (2) the children's needs are unmet, and (3) the children's needs are unlikely to be met without State intervention. *In re S.D.*, 2 N.E.3d at 1287. Because a CHINS

---

[3] The juvenile court also adjudicated S.W. a CHINS under Indiana Code section 31-34-1-2, which states, "[a] child is a child in need of services if before the child becomes eighteen (18) years of age the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian and the child needs care, treatment, or rehabilitation that the child is not receiving and is unlikely to be provided or accepted without the coercive intervention of the court."

proceeding is a civil proceeding, the State must prove the child is a CHINS by a preponderance of the evidence. *In re K.D.*, 962 N.E.2d at 1253.

[13] Father first argues the juvenile court's determination the Children are CHINS due to the long-term sexual abuse of R.W. is clearly erroneous. Father cites to *In re D.H.*, 859 N.E.2d 737 (Ind. Ct. App. 2007). There, seventeen-year-old S.L. alleged she had been molested by her stepfather for several years as a young girl. The DCS removed the other five children from the home and filed verified petitions alleging the children to be CHINS. In its fact-finding order, the juvenile court found S.L.'s testimony to be credible, but specifically declined to find the allegations to be true or not true. Based on its findings, the juvenile court concluded that "*if the allegations were true*, the Children would be endangered." *Id.* at 744. On appeal, we reversed the juvenile court's decision as clearly erroneous, stating, "to permit the Children to be declared CHINS based upon speculation that the Children would be endangered if the allegations regarding S.L. were true would contravene the CHINS statutes." *Id.*

[14] Father argues that, similar to *In re D.H.*, the juvenile court's decision was based on speculation of sexual abuse.[4] Father is incorrect and *In re D.H.* is of no

---

[4] Father alleges "the [juvenile] court found R.W. credible despite the fact that her testimony did not conform to the CHINS petitions." Corrected Brief of Appellant at 15. Although the juvenile court did not find the allegations in the CHINS petitions to be true in their entirety, Father's contention R.W.'s testimony did not conform to the CHINS petitions is simply not accurate. In addition, Father also points to the juvenile court's findings regarding R.W.'s refusal or inability to discuss the abuse with Mother and a prior interview with the DCS in which she denied any sexual abuse had occurred. We interpret this as a request to reweigh the evidence, which we will not do. *In re K.D.*, 962 N.E.2d at 1253.

benefit to him in this case. Unlike in *In re D.H.*, the juvenile court specifically found R.W.'s testimony to be credible and true. The juvenile court's finding of fact states, "The Court finds that the allegations contained in the Verified Petitions Alleging Child in Need of Services . . . as modified consistent with the testimony and resultant findings contained herein as to the sexual abuse of [R.W.] are true." Appendix of Appellant, Volume II at 169. Thus, the juvenile court's determination was not based on speculation, but upon testimony from R.W. which it found to be true. We further note the CHINS statutes do not require a court to wait until a tragedy occurs to intervene. *In re A.H.*, 913 N.E.2d 303, 306 (Ind. Ct. App. 2009). And although R.W. stated she did not believe Father has sexually abused any of the other Children, she did worry for their safety and thought it could occur again. Given this evidence and the juvenile court's findings, we cannot say its adjudication of the Children as CHINS is clearly erroneous.[5]

[15] Father also contends the juvenile court's judgment regarding coercive intervention of the court is clearly erroneous. Here, the juvenile court determined coercive intervention was necessary because Mother and Father remain living together, they did not comply with the DCS' investigation, and

---

[5] Even assuming the juvenile court's judgment regarding the sexual abuse allegations is clearly erroneous, we note Father does not challenge the juvenile court's determination the Children's physical or mental conditions were seriously impaired or seriously endangered due to the poor condition of the home.

they refused to acknowledge the Children's poor living conditions or the sexual abuse of R.W.

[16] Our supreme court has observed that the "coercive intervention" element "guards against unwarranted State interference in family life, reserving that intrusion for families where parents lack the *ability* to provide for their children, not merely where they encounter *difficulty* in meeting a child's needs." *In re S.D.*, 2 N.E.3d at 1287 (internal quotations omitted). When determining CHINS status under Indiana Code section 31-34-1-1, particularly the "coercive intervention" element, courts "should consider the family's condition not just when the case was filed, but also when it is heard." *In re D.J.*, 68 N.E.3d 574, 580 (Ind. 2017) (citation omitted).

[17] The juvenile court's CHINS order included factual findings supporting its conclusion that coercive intervention was necessary at the time the DCS received the initial report and allegations. At the time of the fact-finding hearing, Mother and Father had only begun to participate in services. Those services included homemaker and parent-aid services to both Mother and Father. DCS Family Case Manager Alyssa Justice stated both parents were complying with the services offered. However, Justice also stated Mother and Father had only recently started participating in services and she would not feel comfortable with the Children returning to Mother and Father's home at that time, given the severity of the allegations and the unimproved condition of the home. Further, Justice stated there had been no acknowledgment from either

parent of the DCS' allegations. Accordingly, the juvenile court's determination that coercive intervention of the court was necessary is not clearly erroneous.[6]

# Conclusion

[18] The juvenile court's CHINS order is not clearly erroneous. Accordingly, the judgment of the juvenile court is affirmed.

[19] Affirmed.

Vaidik, C.J., and Bailey, J., concur.

---

[6] Because we affirm the juvenile court's adjudication of the Children as CHINS under Indiana Code section 31-34-1-1, and S.W. is included in that adjudication, we do not separately address Father's argument the juvenile court's adjudication of S.W. as a CHINS under Indiana Code section 31-34-1-2 is clearly erroneous.