## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 12 2018, 7:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT MOTHER

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEY FOR APPELLANT FATHER

Frederick A. Turner
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General of Indiana
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Matter of the Termination of the Parent-Child Relationship of: G.M. *(Minor Child)*

and

H.M. *(Mother)* and L.B. *(Father)*,

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

January 12, 2018

Court of Appeals Case No. 60A01-1707-JT-1755

Appeal from the Owen Circuit Court

The Honorable Kelsey B. Hanlon, Judge

Trial Court Cause No. 60C02-1610-JT-278

**Robb, Judge.**

# Case Summary and Issue

[1] H.M. ("Mother") and L.B. ("Father") appeal the juvenile court's order terminating their parental rights to their child, G.M ("Child"). Mother and Father raise several issues for our review, which we consolidate and restate as whether the juvenile court's termination order is clearly erroneous.[1] Concluding the juvenile court's order is not clearly erroneous, we affirm.

# Facts and Procedural History

[2] Child was born to Mother and Father in June of 2012. The Indiana Department of Child Services ("DCS") removed Child from Mother's care in April of 2014 after Mother gave birth to a child who tested positive for methamphetamine, amphetamine, and THC.[2] The DCS filed a petition alleging Child to be a child in need of services ("CHINS") and, following a fact-finding hearing, the juvenile court adjudicated Child to be a CHINS. Mother and Father were ordered to participate in reunification services. For Mother, this included participation in addictions counseling, recovery coaching, life skills training, drug screening, and supervised visitations. The juvenile court ordered Father to establish paternity, participate in home-based counseling and

---

[1] Mother and Father filed separate appellant's briefs.

[2] Mother's parental rights to Child's half-sibling were terminated in a separate proceeding and are not part of this appeal.

casework, attend individual therapy and homemaking skills classes, and have supervised visitations.

[3] Despite the services offered by the DCS, Mother continued to use and test positive for illegal narcotics, causing the juvenile court to suspend her visitations with Child. From July of 2016 to May of 2017, Mother tested positive for methamphetamine nine times, marijuana one time, and synthetic cannabinoids one time. Mother failed to complete substance abuse treatment and did not participate in any further substance abuse treatment after May of 2017.

[4] Prior to the CHINS allegations, Father did not regularly visit or interact with Child and his paternity was not confirmed until the CHINS proceedings began. Leading up to the CHINS fact-finding hearing, Father had not seen Child for three months. Since Father began visitations with Child after the CHINS adjudication, he has struggled to create a bond with her in his approximately fifty-five visits since November of 2016. Trisha May, a Life Skills Specialist at Cummins Behavioral Health testified that "[Father] is engaged during visits, [but] there is a lack of bonding, I think he has a desire to be bonded with [Child], but there is a bonding problem, it's something that we've been trying to utilize some skills to increase the bond during visits." Transcript at 59. Rebecca Cape, Child's court appointed special advocate ("CASA") also testified Child has not bonded with Father. She stated,

> I am concerned because of [Child's] attitude that she does not
> feel, I don't believe she feels a strong bond with [Father], and I'm

concerned, I mean this has been going on for three years now and I would have hoped that we would have been much farther along at this point.

*Id.* at 164.

[5] Father's parenting skills have also failed to progress to the necessary level to care for Child since he began receiving services. In all but ten of his supervised visitations, supervisors found it necessary to model appropriate behavior to Father about his interactions with Child. Additionally, the DCS has noted problems with Father's home because it is often unsanitary and cluttered with trash. The DCS caseworkers observed trash, dirty dishes, pots and pans, and particles of food piled up in the sink. Father also permitted trash and trash bags to pile up in the entryway of his apartment such that he had to clear a pathway in order to move from one room to another. Megan Berkebile-Guy, the DCS family case manager, concluded that Father's home "is still not a safe place to bring a child to . . . ." *Id.* at 210.

[6] On October 24, 2016, the DCS filed a verified petition seeking the involuntary termination of Mother's and Father's parental rights. The juvenile court held the evidentiary hearing over two days, on June 8 and July 18, 2017. On July 21, 2017, the juvenile court issued its order terminating Mother's and Father's parental rights. The juvenile court made the following findings of fact and conclusions thereon:

> b. There is a reasonable probability that the conditions that resulted in the Child's removal or the reasons for

placement outside the parent's home will not be remedied and the continuation of the parent-child relationship poses a threat to the wellbeing of the Child, to wit:

* * *

xii. Over the life of the underlying CHINS matter, [Mother] has failed to address her substance abuse issues in a manner that would allow the Child to be safely returned to her home.

xiii. After the first Involuntary Petition for Termination was denied, [Mother's] participation [in] chemical testing continued to established [sic] a pattern of methamphetamine use with positive tests for methamphetamine . . . [m]arijuana . . . [and] synthetic cannabinoids.

* * *

xv. [Father] has participated in numerous services, however, his ability to benefit from these services appears to be very limited.

xvi. [Father] resides with his girlfriend . . . . [His girlfriend] lost custody of all three of her prior born Children due to involvement with DCS.

xvii. The DCS offered services to [Father's girlfriend] as she would likely be a primary caregiver to [Child] if reunification with [Father] commenced. [She] did not fully participate in said services.

xviii. [Father's girlfriend] smokes in home.

xix. Tricia May, a Homebased Casework provider from Cummins worked with [Father] to address environmental concerns in the home, budgeting, parenting, and to provide extra support to [Father].

* * *

xxii.       While supervised visits were taking place in [Father's] home, the home was notably cluttered. [Father's] kitchen had multiple trash bags on the floor and other environmental hazards. Supervision of Father's visits was necessary, at least in part, to prevent the Child from being harmed by environmental safety concerns.

xxiii.      [Father] struggles to interact in developmentally appropriate ways with the Child. . . . [Father] still requires prompting to use appropriate praise with the Child. [Father] struggles to initiate appropriate conversations with the Child.

* * *

xxvi.       At times, [Father] fails to interact with the Child during the visits.

* * *

xxxviii.    The CASA reports that the Child does not appear to [be] bonded with the Father.

* * *

xlvii.      [Father] has been unable to maintain home conditions that are safe and sanitary for the Child. After receiving services for months, [Father] was visited by the [family case manager] . . . and the home conditions were not sanitary.

xlviii.     [Father] is regularly behind on rent and on his electrical bill.

* * *

c.          Termination of the Parent-Child relationship is in the best interest of the Child . . . .

Appellants' Joint Appendix, Volume 2 at 40-46. Mother and Father now appeal. Additional facts will be added as necessary.

# Discussion and Decision

## I. Standard of Review

When we review a termination of parental rights, we neither weigh the evidence nor judge witness credibility, *In re C.G.*, 954 N.E.2d 910, 923 (Ind. 2011), and we consider only the evidence and reasonable inferences most favorable to the judgment, S.*L. v. Ind. Dep't of Child Servs.*, 997 N.E.2d 1114, 1123 (Ind. Ct. App. 2013). As required by statute, the juvenile court entered findings of fact and conclusions. *See* Ind. Code § 31-35-2-8(c). We therefore apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *In re C.G.*, 954 N.E.2d at 923. We will only set aside a juvenile court's judgment terminating a parent-child relationship if it is clearly erroneous. A judgment is clearly erroneous if it leaves us with a definite and firm conviction that a mistake has been made. *S.L.*, 997 N.E.2d at 1123.

## II. Termination of Parental Rights

"[T]he involuntary termination of parental rights is an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed . . . ." *In re K.W.*, 12 N.E.3d 241, 249 (Ind. 2014) (alteration in original) (citation omitted). Indiana Code section 31-35-2-4(b)(2) sets forth what the

DCS must prove in order to terminate parental rights, which we quote in relevant part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child . . . .

The State must prove each element by clear and convincing evidence. Ind. Code § 31-34-12-2. If a juvenile court determines that the allegations of the petition are true, then the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[10] As to both Mother and Father, the juvenile court found there is a reasonable probability the conditions that resulted in Child's removal or the reasons for placement outside the home will not be remedied and the continuation of the parent-child relationship poses a threat to Child's well-being. Mother and Father both challenge whether the juvenile court's termination order is supported by clear and convincing evidence and whether termination was in Child's best interest.

# A. Termination of Father's Parental Rights

[11] Initially, we note Father's brief does not challenge the juvenile court's determination the continuation of the parent-child relationship poses a threat to Child's well-being, only its determination the conditions that resulted in Child's removal or the reasons for placement outside the home will not be remedied. We point out, as we have in prior opinions, that Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and the DCS was only required to establish one of the two requirements of subparagraph (B). *See In re I.A.*, 903 N.E.2d 146, 153 (Ind. Ct. App. 2009). Because Father does not challenge the juvenile court's conclusion that the continuation of the parent-child relationship poses a threat to Child's well-being, we need not consider his argument.

[12] Nonetheless, we disagree with Father's assertion that the juvenile court's determination that conditions would not be remedied is not supported by clear and convincing evidence.

> To determine whether there is a reasonable probability that the conditions which resulted in the removal of the children will not be remedied, the trial court should judge a parent's fitness to care for [his] children at the time of the termination hearing, taking into consideration evidence of changed conditions. The trial court must also evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. The trial court can also reasonably consider the services offered to the parent by [DCS] and the parent's response to those services.

*In re D.J.*, 755 N.E.2d 679, 684 (Ind. Ct. App. 2001) (internal citations omitted), *trans. denied*. "[I]t is not just the basis for the initial removal of the child that may be considered for purposes of determining whether a parent's rights should be terminated, but also those bases resulting in the continued placement outside of the home." *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*.

[13] The juvenile court's findings establish that Child was removed from Mother's care when Mother's subsequent child was born testing positive for illegal drugs. Child was never in Father's care, as he had no real relationship with Child until these proceedings. Child continues to remain out of Father's care due to concerns over the safety and cleanliness of Father's apartment and Father's parenting skills and ability to care for Child. Although the testimony presented at the termination hearing demonstrated Father had improved and learned new parenting skills, he had not progressed to unsupervised visits or to the level where the DCS felt comfortable with Child being in Father's apartment. Father's family case manager testified that his apartment is "still not safe" for Child and Father still needs to be prompted to clean it. Tr. at 210. Moreover, Father is often behind on paying rent and constantly has the "threat of eviction" or "electricity being shut off." *Id.* As to Father's parenting skills, his family case manager stated,

> We have concerns for parenting and his ability to understand, kind of just basic parenting skills, how to take care of a . . . five year old little girl . . . . At one team meeting we discussed [Child's] pants kept falling down at a visit and we talked about this and I said why wouldn't you pull her pants up, he didn't— he's very uncomfortable doing anything because she's a girl and

he's male and that would be deemed inappropriate. I tried to explain to him that a . . . five year old little girl still needs assistance in the bathroom, in taking a shower and so forth, they still need help getting their clothes on at times and he was very adamant that he was not going to be able to assist with that.

*Id.* She further stated that Father does not "ha[ve] any sort of plan to have a child in his house as far as his work schedule and his life and the ability to change his schedule to match hers . . . ." *Id.* at 210-11. Finally, the juvenile court's findings demonstrate Child has not bonded with Father and is often despondent toward him during their visits.

[14] Although we recognize that Father did participate in services, receiving services alone is insufficient if it does not bring about the necessary changes. *In re J.S.*, 906 N.E.2d 226, 234 (Ind. Ct. App. 2009). At the time of the termination hearing and three years after Child's removal from Mother's and Father's care, the DCS presented evidence demonstrating Father's parenting skills were not sufficient to care for Child and that Father's apartment was still unsafe for Child to live in. Based on this evidence, we conclude sufficient evidence supports the juvenile court's determination that there is a reasonable probability the conditions resulting in Child's continued placement outside Father's care will not be remedied.

## B. Termination of Mother's Parental Rights

[15] Mother asserts the juvenile court's conclusion that the conditions resulting in Child's removal will not be remedied is unsupported by the evidence. Upon

review, we have little trouble concluding clear and convincing evidence supports the juvenile court's conclusion.[3]

[16] As previously noted, Child was removed from Mother's care due to Mother's alleged drug use. Following the CHINS proceeding, Mother was ordered to refrain from using illegal drugs, participate in drug screenings, and attend therapy for drug addiction. In the ensuing three years, Mother attended two different drug treatment programs but failed to successfully complete either of them. Moreover, Mother tested positive for methamphetamine on July 26, 2016; July 28, 2016; August 4, 2016; August 8, 2016; September 12, 2016; September 13, 2016; September 26, 2016; January 23, 2017; and April 26, 2017; for marijuana on May 18, 2017; and for synthetic cannabinoids on May 23, 2017. Mother's continued drug use also led to the suspension of her visitation with Child. We conclude clear and convincing evidence supports the juvenile court's determination that Mother's drug use will not be remedied. *See In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014) (holding juvenile court's termination order was not clearly erroneous where mother and father failed to address substance abuse issues or complete treatment), *trans. denied*.

---

[3] As with Father, we need only determine clear and convincing evidence supports one of the two requirements of Indiana Code section 31-35-2-4(b)(2)(B). Accordingly, we do not address Mother's argument alleging there is insufficient evidence to support the juvenile court's determination the parent-child relationship poses a threat to Child's well-being.

# III. Child's Best Interests

[17] Mother and Father also allege that termination of their parental rights is not in Child's best interest. In determining the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and to consider the totality of the evidence. *In re J.S.*, 906 N.E.2d at 236. In doing so, "the [juvenile] court must subordinate the interests of the parent to those of the child." *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013). The juvenile court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.* Recommendations of the case manager and CASA, in addition to evidence that the conditions resulting in removal will not be remedied or that the parent-child relationship poses a threat to Child's well-being, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

[18] Child is now five years old and has been removed from her parents' care for three years. Child needs permanency in her life and it is obvious her parents are unable to provide this. *See K.T.K v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1235 (Ind. 2013) (noting permanency is a central consideration in determining a child's best interest). Moreover, both the DCS family case manager and the CASA testified it was in Child's best interest to terminate Mother's and Father's parental rights. *See* Tr. at 168, 217. Because we have previously held that recommendations of the case manager and court-appointed advocate, in addition to evidence establishing a reasonable probability of either requirement under Indiana Code section 31-35-2-4(b)(2)(B), are sufficient to show by clear

and convincing evidence that termination of parental rights is in a child's best interests, we conclude that the juvenile court did not err in its determination. *See In re J.C.*, 994 N.E.2d at 290.

# Conclusion

[19] The juvenile court's order terminating Mother's and Father's parental rights is not clearly erroneous. Accordingly, we affirm the judgment of the juvenile court.

[20] Affirmed.

Crone, J., and Bradford, J., concur.