## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 26 2018, 8:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Don R. Hostetler
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:
A.J. *(Minor Child)*

and

H.J. *(Father)*,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

April 26, 2018

Court of Appeals Case No.
49A05-1711-JT-2637

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge

The Honorable Larry Bradley, Magistrate

Trial Court Cause No.
49D09-1512-JT-738

**Robb, Judge.**

## Case Summary and Issue

[1] H.J. ("Father") appeals the juvenile court's order terminating his parental rights to his child, A.J. ("Child"). Father raises multiple issues for our review, which we consolidate and restate as whether the juvenile court's termination order is clearly erroneous. Concluding the juvenile court's order is not clearly erroneous, we affirm.

## Facts and Procedural History

[2] Child was born on September 11, 2012, to Father and T.R. ("Mother"). On November 13, 2014, the Indiana Department of Child Services ("DCS") filed a verified petition alleging Child and her stepsister, A.R., were children in need of services ("CHINS").[1] DCS removed Child and A.R. from Mother's care because A.R. tested positive for marijuana at birth. At the time of the filing of the CHINS petition, Father was incarcerated in the Indiana Department of Correction ("DOC").[2] On February 24, 2015, Father stipulated that Child was a CHINS and the juvenile court entered a dispositional order placing Child in relative care with her maternal grandmother. The juvenile court's dispositional order also notified Father that he was to contact DCS within seventy-two hours

---

[1] Father is not A.R.'s parent. Further, Mother's parental rights to Child and A.R. were terminated in a separate proceeding and neither Mother nor A.R. are a party to this appeal.

[2] Father pleaded guilty to burglary on January 8, 2013, and received a twelve-year sentence with five years suspended. Father's criminal history also includes two convictions, one in 2007 and one in 2008, for carrying a handgun without a license, one as a Class A misdemeanor and the other as a Class C felony, respectively. Father served time in the DOC for each conviction.

following his release from incarceration. On December 10, 2015, DCS filed its verified petition seeking the involuntary termination of both Father's and Mother's parental rights.

[3] During his time in the DOC, Father completed the DOC's "Inside Out Dad" program and a substance abuse program, received his general education diploma, and took a class in culinary arts. Transcript, Volume II at 66. Father was released from incarceration on November 10, 2016. Father did not contact DCS following his release from prison; however, he did spend time with Child and frequently visited her from the date of his release from incarceration until April of 2017. DCS, however, was unable to find or contact Father until March of 2017. In April of 2017, DCS halted Father's informal visits with Child and permitted him to visit Child only pursuant to a supervised visit. Father had only one supervised visitation with Child which occurred on April 30, 2017.

[4] On March 18, 2017, Father was arrested and charged with possession of cocaine, a Level 6 felony; and resisting law enforcement, a Class A misdemeanor. On April 25, 2017, Father was arrested again and charged with intimidation, a Level 6 felony; interference with the reporting of a crime, a Class A misdemeanor; and criminal mischief, a Class B misdemeanor.

[5] Father pleaded guilty to intimidation in August of 2017 in exchange for the State's dismissal of the remaining two charges stemming from the April 2017 arrest. The trial court sentenced Father to 730 days—552 days suspended to probation and eighty-nine days of credit time. In November of 2017, Father

pleaded guilty to possession of cocaine and resisting law enforcement stemming from the March 2017 arrest. The trial court sentenced Father to 545 days executed in the DOC for possession of cocaine, concurrent with 365 days for resisting law enforcement.

[6] On October 16, 2017, the juvenile court held a hearing on DCS' petition to involuntarily terminate Father's parental rights.[3] At the hearing, both Naomi Boone, the DCS family case manager, and Mark Bass, the Guardian ad Litem, testified it was in Child's best interest for Father's parental rights to be terminated. The juvenile court issued its findings of fact and conclusions thereon on October 23, 2017. The juvenile court found, in relevant part,

> 20.    There is a reasonable probability that the conditions that resulted in [Child's] removal and continued placement outside the home will not be remedied by [Father]. [Father] was incarcerated for most of the CHINS proceeding, and remains incarcerated after committing new crimes during the CHINS case, violating probation. When not incarcerated, he minimally participated in services.
>
> 21.    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to [Child's] well-being in that it would pose as a barrier to obtaining permanency for her through an adoption into the only home she has really known, and by caregivers with whom she is bonded and shares a parent-child relationship.
>
> * * *

---

[3] Although incarcerated in the DOC at the time, Father appeared in person at the fact-finding hearing.

24. Termination of the parent-child relationship is in the best interests of [Child]. Termination would allow her to be adopted into a loving and permanent home with her sibling.

Appealed Order at 2. Father now appeals.

# Discussion and Decision

## I. Standard of Review

[7] In reviewing a juvenile court's order terminating parental rights, we neither weigh the evidence nor judge witness credibility and we consider only the evidence and reasonable inferences most favorable to the judgment. *In re C.G.*, 954 N.E.2d 910, 923 (Ind. 2011). We apply a two-tiered standard of review to the juvenile court's findings of fact and conclusions thereon: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id.* "We will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. Clear error is that which leaves us with a definite and firm conviction that a mistake has been made." *S.L. v. Ind. Dep't of Child Servs.*, 997 N.E.2d 1114, 1123 (Ind. Ct. App. 2013) (citation omitted).

## II. Termination Order

[8] Father contends the juvenile court's termination order is clearly erroneous in three respects: (1) DCS failed to meet its burden of proof that the conditions resulting in Child's removal and continued placement outside the home would not be remedied; (2) DCS failed to meet its burden of proof that the

continuation of the parent-child relationship poses a threat to Child's well-being; and (3) DCS failed to meet its burden that termination of Father's parental rights is in Child's best interest.

[9] "[T]he involuntary termination of parental rights is an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed . . . ." *In re K.W.*, 12 N.E.3d 241, 249 (Ind. 2014) (alteration in original) (citation omitted). Indiana Code section 31-35-2-4(b)(2) sets out what must be proven in order to terminate parental rights, which we provide in relevant part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child[; and]
>
> * * *
>
> (C) that termination is in the best interests of the child . . . .

[10] The State must prove each element by clear and convincing evidence. Ind. Code § 31-34-12-2. If a juvenile court determines the allegations of the petition are true, then the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[11] We first address Father's argument DCS failed to present clear and convincing evidence the conditions that resulted in Child's removal or placement outside

the home will not be remedied. In determining whether there is a reasonable probability that "the conditions which resulted in the removal of the [child] will not be remedied, the [juvenile] court should judge a parent's fitness to care for his [child] at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re M.M.*, 733 N.E.2d 6, 13 (Ind. Ct. App. 2000). The juvenile court must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the children. *Id.*

[12] Father alleges the juvenile court and DCS placed too much emphasis on his incarceration and overlooked the activities he undertook while in the DOC to prepare himself to care for Child. He argues the "DCS's [sic] singular showing that frequent incarcerations prevent [Father] from remedying conditions . . . is not valid under Indiana Supreme Court precedent." Brief of Appellant at 12. In support of this argument, Father cites to *In re G.Y.*, 904 N.E.2d 1257 (Ind. 2009). However, Father misreads our supreme court's opinion in *In re G.Y.*

[13] In *In re G.Y.*, a mother was incarcerated when her child was twenty months old for an offense—dealing in cocaine as a Class B felony—committed before her child was conceived. The mother committed no crimes after the child was born. While incarcerated, the mother had regular visitation with the child and she completed a drug treatment program and a parenting class. She also made arrangements for employment and suitable housing upon release from prison, which was to occur as early as sixteen months after the termination hearing. Moreover, the mother's child was placed in foster care and doing well in that

placement and there was no evidence that continued placement in that setting while mother completed her prison term would be detrimental. Nonetheless, the juvenile court terminated her parental rights.

[14] On appeal, the mother challenged whether termination of her parental rights was in her child's best interest. Our supreme court, based on mother's good-faith effort to engage in services while incarcerated and her lack of a criminal history since her child's birth, agreed with mother that DCS failed to present clear and convincing evidence that termination of her parental rights was in her child's best interest. *Id.* at 1262.

[15] *In re G.Y.* is inapplicable to Father's case for several reasons. First, our supreme court concluded the DCS failed to present sufficient evidence that termination was *in child's best interest*. The opinion solely addressed whether there was sufficient evidence to conclude the termination of the mother's parental rights was in the child's best interest and does not prevent a court from considering whether "frequent incarcerations" can result in a reasonable probability conditions will not be remedied. Br. of Appellant at 12. Second, unlike *In re G.Y.*, where the mother did not commit any crimes after the birth of her child, Father has continued criminal activity and pleaded guilty to crimes on two separate occasions during the termination proceedings.

[16] This court has repeatedly recognized that "[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." *Castro v. State Office of Family &*

*Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. Child was initially removed from Mother's care due to Mother's alleged drug use and Father was incarcerated at that time and unable to care for Child. Father has been incarcerated for a majority of Child's life and has not significantly cared for her in any capacity. Although we commend Father for completing programs and classes while incarcerated, when he had the opportunity to parent his child, Father failed to contact the DCS as required and in a very short time ended up back in prison having committed several new crimes. *See Wagner v. Grant Cty. Dep't of Pub. Welfare*, 653 N.E.2d 531, 533-34 (Ind. Ct. App. 1995) (holding sufficient evidence supported the juvenile court's termination of parental rights where father spent a majority of child's life in jail and had new charges pending against him at the time of the termination hearing). There is sufficient evidence to support the juvenile court's determination that there is a reasonable probability that the conditions that resulted in Child's placement outside the home will not be remedied.[4]

[17] Father also argues the DCS failed to present sufficient evidence that termination of his parental rights is in Child's best interest and directs the court to *In re A.B.*, 888 N.E.2d 231 (Ind. Ct. App. 2008), *trans. denied*. There, we concluded the

---

[4] As noted above, Father also contends the juvenile court erred in finding continuation of the parent-child relationship poses a threat to Child's well-being. However, Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires only one element in that subsection be proven to support termination of parental rights. *See In re I.A.*, 903 N.E.2d 146, 153 (Ind. Ct. App. 2009). Because we conclude the evidence is sufficient to show a reasonable probability the conditions resulting in Child's removal will not be remedied, we need not also determine whether the juvenile court erred in concluding continuation of the parent-child relationship posed a threat to Child's well-being.

recommendation of Guardian ad Litem and family case manager *alone* "may not serve as a basis for termination of parental rights." *Id.* at 239. While Father accurately points out relevant case law, this court has held the "[r]ecommendations of the case manager and court-appointed advocate, *in addition to evidence that the conditions resulting in removal will not be remedied*, are sufficient to show by clear and convincing evidence that termination is in the child's best interests." *In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014) (emphasis added), *trans. denied*.

[18] As noted above, there is sufficient evidence that the conditions resulting in Child's removal will not be remedied. In addition, the DCS family case manager and Guardian ad Litem both recommended termination.

| [DCS]: | Based on your work with this case, is termination in the best interests between [Child] and [Father]? |
| [FCM Boone]: | Absolutely. |
| * * * | |
| [GAL Counsel]: | Do you believe the plan of adoption is in [Child's] best interests? |
| [GAL Bass]: | Yes. |
| [GAL Counsel]: | Do you believe that [Father] should be given additional time to participate in and/or complete services? |
| [GAL Bass]: | I do not. |

Tr., Vol. II at 36, 59-60. Father also states that "[a] parent's right to his child may not be terminated solely because there is a better place for the child to live." Br. of Appellant at 16 (quoting *In re A.B.*, 888 N.E.2d at 239). Father has been incarcerated for a majority of Child's young life and, as far as the record demonstrates, has never provided a place for Child to live. Child has been cared for by someone other than her natural parents for most of her life and is in need of permanency and stability. Accordingly, DCS presented clear and convincing evidence from which the juvenile court could conclude that termination of Father's parental rights was in Child's best interest.[5]

# Conclusion

[19] The juvenile court's order terminating Father's parental rights is not clearly erroneous. Accordingly, we affirm the juvenile court's judgment.

[20] Affirmed.

Najam, J., and Altice, J., concur.

---

[5] We take the opportunity to note DCS' brief provides very little substantive discussion with respect to whether termination is in Child's best interest. It is not enough the DCS has alleged and satisfied one of the factors described in Indiana Code section 31-35-2-4(b)(2)(B). DCS must still prove termination is in Child's best interest and, although we conclude termination is in Child's best interest in this case, whether DCS has met its burden of proof is not a foregone conclusion. *See In re G.Y.*, 904 N.E.2d at 1262.