## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 20 2020, 10:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of L.R. (Minor Child)

and

M.C. (Mother) and S.R. (Father),

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

March 20, 2020

Court of Appeals Case No. 19A-JT-2101

Appeal from the Elkhart Circuit Court

The Honorable Michael A. Christofeno, Judge

The Honorable Deborah Domine, Magistrate

Trial Court Cause No. 20C01-1903-JT-17

**Crone, Judge.**

# Case Summary

[1]     M.C. ("Mother") and S.R. ("Father") (collectively "Parents") appeal an order terminating their parental relationships with their two-year-old daughter, L.R. ("Child"). Finding that they have failed to meet their burden of establishing that the trial court clearly erred in ordering termination, we affirm.

# Facts and Procedural History

[2]     The facts most favorable to the judgment are as follows. Mother and Father were in a romantic relationship in 2017, and Mother gave birth to Child on December 15, 2017. Father was listed as the father on Child's birth certificate. At birth, Child tested positive for methamphetamine, amphetamine, and marijuana. Hospital personnel contacted the Indiana Department of Child Services ("DCS"). On December 18, 2017, DCS removed Child from Mother and placed her with Father. That same day, DCS filed a petition seeking to have Child adjudicated a child in need of services ("CHINS"), citing neglect due to Child's positive tests for illegal substances and Mother's addiction to controlled substances and admission to marijuana use during the last two weeks of her pregnancy. Parents admitted to the CHINS allegations, and on January

4, 2018, Child was adjudicated a CHINS. Mother was ordered to pay child support, to complete substance abuse and psychological parenting assessments, and to participate in home-based case management, therapy services, and supervised visitation. Both Mother and Father were ordered to submit to random drug screens. Child's placement was continued with Father, under DCS supervision.

[3] On February 28, 2018, Father notified DCS that he did not want to be a father anymore and asked that Child be removed from his care. He also tested positive for methamphetamine, admitted that Child was present in a home while methamphetamine was used, and reported that he was no longer taking his medication for post-traumatic stress disorder ("PTSD"). On March 1, 2018, DCS sought a modification of placement, after which Child was placed with a foster family with whom she has resided since. Father was ordered to complete a substance abuse assessment and treatment, attend scheduled visitation, participate in fatherhood engagement services, and continue random drug screens.

[4] In a May 2018 progress report, DCS noted that Mother had visited Child five times but had been noncompliant with service providers. Father also was noncompliant and reported that he cared for Child but that Child "is not his." Appellants' App. Vol. 2 at 130; *see also* Tr. Vol. 2 at 159 (Father's admission of

paternity during factfinding).[1] The trial court conducted several additional progress hearings, all with findings indicating that neither parent had visited Child or participated in ordered services.

[5] On March 19, 2019, DCS filed a petition for termination of Parents' parental rights. Father did not appear at the factfinding hearing despite having received notice. Mother did not receive notice, and her whereabouts were unknown. The factfinding hearing was rescheduled and eventually conducted in August 2019, with both parents in attendance. DCS Family Case Manager ("FCM") Cindy Silveus and court appointed special advocate ("CASA") Karen Snyder both testified concerning Parents' noncompliance with services, their lack of visitation with Child, and Child's need for stability and permanency. Both recommended termination and adoption. On August 26, 2019, the trial court issued an order with findings of fact and conclusions thereon terminating Mother's and Father's parental relationships with Child. Parents now appeal. Additional facts will be provided as necessary.

## Discussion and Decision

[6] Parents challenge the sufficiency of the evidence supporting the trial court's judgment terminating their parental relationships with Child. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we first determine whether the evidence supports

---

[1] Father's paternity was established on the basis of the birth certificate. Father did not take a DNA test because he had not contested paternity.

the findings and then whether the findings support the judgment.[2] *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor judge witness credibility. *E.M.*, 4 N.E.3d at 642. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id*. "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citations omitted). Where, as here, the appellants do not specifically challenge any of the trial court's findings, they stand as proven, and we simply determine whether the unchallenged findings are sufficient to support the judgment. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*; *see also McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (unchallenged findings are accepted as true).

[7]     In *Bester*, our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and

---

[2] Several of the trial court's findings are mere recitations of testimony by the parties and witnesses. The mere recitation of testimony does not amount to a proper finding of fact; rather, the trial court must adopt the testimony of the witness. *S.L. v. Ind. Dep't of Child Servs.*, 997 N.E.2d 1114, 1121-22 (Ind. Ct. App. 2013). Here, however, the trial court made thoughtful findings that flow from the recited evidence, and because these ultimate findings clearly identify the trial court's reasons for termination, the trial court's findings as a whole are sufficient to support its termination order.

control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

839 N.E.2d at 147 (citations, quotation marks, and alteration omitted).

[8]     To obtain a termination of a parent-child relationship, DCS is required to establish in pertinent part:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

….

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> > (C) that termination is in the best interests of the child; and
>
> > (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[9] In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied*. "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted). "[I]f the court finds that the allegations in a [termination] petition … are true, the court *shall* terminate the parent-child relationship." Ind. Code § 31-35-2-8(a) (emphasis added).

# Section 1 – Parents have failed to demonstrate that the trial court clearly erred in concluding that there is a reasonable probability that the conditions that led to Child's removal will not be remedied.

[10]   Parents assert that the evidence is insufficient to support the trial court's conclusion that a reasonable probability exists that the conditions that led to Child's removal will not be remedied.  They do not specifically challenge any of the trial court's findings, so we simply determine whether the unchallenged findings are sufficient to support the judgment.  *T.B.*, 971 N.E.2d at 110.  When assessing whether there is a reasonable probability that conditions that led to a child's removal will not be remedied, we must consider not only the initial basis for the child's removal but also the bases for continued placement outside the home.  *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*.  Moreover, "the trial court should judge a parent's fitness to care for his [or her] children at the time of the termination hearing, taking into consideration evidence of changed conditions."  *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*.  "Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child."  *Id.*  In making its case, "DCS need not rule out all possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change."  *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).  The court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to

provide support. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

[11] Mother's substance abuse was the principal reason for Child's initial removal, with Child having tested positive for methamphetamine, amphetamine, and marijuana at birth. Mother admitted to having used drugs for several years, beginning at age fifteen with her use of ADHD medication to treat her attention deficit hyperactivity disorder, then advancing to other drugs such as methamphetamine. At the time of the factfinding hearing, she had a pending criminal cause for marijuana possession and admitted to smoking marijuana within the two weeks preceding Child's birth. Yet, throughout the pendency of the CHINS and termination proceedings, she exhibited a pattern of noncompliance with completing her court-ordered drug treatment services. She twice began residential drug treatment programs but did not complete them. The first time, she left the program after just seven days. She began her second drug treatment program just thirteen days before the factfinding hearing and acknowledged that she was "finally doing this." Tr. Vol. 2 at 146; *see also id.* at 155 (Mother's admission that she did not participate in any substance abuse treatment before June 2019, two months before factfinding). While her recent efforts are laudable, the trial court, in its discretion, was free to discount evidence concerning her last-minute remedial efforts. *See K.T.K.*, 989 N.E.2d at 1234 (trial court has discretion to disregard or discount evidence of remedial efforts made only shortly before termination hearing). This is particularly significant when considered in conjunction with Mother's lack of compliance

with other court-ordered services,[3] failure to stay in contact with DCS, and failure to participate in her supervised visits with Child for more than a year. Tr. Vol. 2 at 153. Mother admitted that she had a pattern of putting her boyfriends' needs first to the detriment of Child's needs, but she declared at the factfinding that "there's not going to be another boyfriend." *Id*. at 133, 152. FCM Silveus testified that both Mother and Father had a pattern of expired service referrals due to nonparticipation and of refusing to provide addresses, which made them very difficult to locate. She said that even when they did check in, they never asked about Child. Both Mother and Father were ordered to participate in visitation, yet both admitted that they had not seen Child for more than a year.

[12] With respect to Father's prospects for remedying the conditions that led to removal, we find it significant that Child was placed in his care after she was removed from Mother and that just two months later, Father specifically requested that DCS remove her from his care. He reported to DCS that he was "done" and that he "wanted to remove [him]self from being a father." Tr. Vol. 2 at 161; *see also* Appealed Order at 3 (uncontested finding 5(b)(ii)). Father's relinquishment of Child coincided with Mother beginning a romantic relationship with another man. Yet, late in the proceedings, when he and Mother were on friendlier terms, he wanted to parent Child. The trial court articulated Father's vacillation concerning Child as follows: "It is concerning,

---

[3] At the factfinding hearing, Mother testified that she did not know what some of the services were and/or thought that some of the services were not ordered for her. Tr. Vol. 2 at 122-23, 142.

however, that Father wants to be a father when he and Mother get along, and wants nothing to do with his daughter when he and Mother are not together."[4] *Id.* at 5 (unchallenged finding 5(b)(xiv)). In other words, Mother and Child were a package deal to Father, with his parenting interest being inextricably tied to his interest in a close relationship with Mother. With respect to his drug issues, Father tested positive for methamphetamine and admitted that Child had been present when methamphetamine was being used. He was in and out of jail during the pendency of the CHINS and termination proceedings, and at the time of the factfinding hearing, he was on probation and was scheduled to begin house arrest. He testified that he had been clean for four months, yet he did not participate in services aimed at addressing his PTSD, mental health, and addiction issues until a week and a half before the factfinding hearing. As with Mother's efforts, the court was free to discount Father's eleventh-hour efforts in favor of his overall pattern of behavior. *K.T.K.*, 989 N.E.2d at 1234.

[13] In determining that there is a reasonable probability that conditions that led to Child's removal would remain unremedied, the trial court found that "throughout most of this case, Parents have been unwilling to cooperate with services and unwilling to cooperate with efforts to reunite the family and both Parents failed to stay in contact with the DCS or Child." Appealed Order at 4 (unchallenged finding 5(b)(viii)). The trial court also articulated that despite Parents' last-minute efforts at drug treatment, "they still had not visited Child

---

[4] The findings include the parties' proper names; we have replaced these references with "Father," "Mother," and "Child."

and still had not completed any of the court-ordered services intended to help them parent." *Id*. (unchallenged finding 5(b)(xvii)). The court ultimately found that

> based on Parents' conduct, their history of drug use, history of failure to establish a relationship with or even visit Child, and history of mental illness and limited treatment, the current promises are not enough to refute the conclusion supported by the evidence that the conditions resulting in removal will not be remedied[.]

*Id*. at 6 (unchallenged finding 5(b)(xxii)). Based on the foregoing, we conclude that neither Mother nor Father has established that this determination is clearly erroneous.

## Section 2 – Parents have failed to demonstrate that the trial court clearly erred in concluding that termination is in Child's best interests.

[14] Parents also assert that the trial court clearly erred in concluding that termination of their parent-child relationships is in Child's best interests. To determine what is in the best interests of a child, we must look at the totality of the circumstances. *In re A.W.*, 62 N.E.3d 1267, 1275 (Ind. Ct. App. 2016). The trial court "need not wait until a child is irreversibly harmed before terminating the parent-child relationship." *S.E. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 37, 47 (Ind. Ct. App. 2014), *trans. denied*. Although not dispositive, permanency and stability are key considerations in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). "A parent's historical inability to

provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children." *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012) (quoting *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied*). Likewise, "the testimony of service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*.

[15] Both FCM Silveus and CASA Snyder testified at the factfinding hearing that termination and adoption are in Child's best interests. FCM Silveus testified concerning Child's tender age (not yet two years old) and the fact that Child had been not been in the care of either parent since she was two months old. She reported that Child is safe and stable in her preadoptive foster placement and that her foster family is the only family that she has ever known. She likened placement with Parents to placement with strangers and stated her belief that such a change would be traumatic. Overall, she stressed the need for permanency. Similarly, CASA Snyder emphasized the foundation and bonds that have been established between Child and her foster family and determined that Child should not be kept on hold while awaiting permanency. The trial court agreed with the service providers and ultimately found:

> viii. Here, 20-month-old Child has been out of the care of Parents for all but about two months of her life. She has been waiting for permanency for more than seventeen months. That is "indefinitely" for a child who is less than two years old. It is indefinitely for Child.

ix. And while Child has been waiting, Parents have done very little to even get to know Child.

x. For all of the cited reasons termination of parental rights is in Child's best interest.

Appealed Order at 7-8.

[16] The totality of the circumstances shows that both Parents have struggled with drug addiction. Their tumultuous relationship has gone from romantic to estranged to friends, and as the relationship has gone, so has gone Father's stability. Mother appears to have sworn off men in an effort to turn her life around, but her lack of stable, independent housing and employment does not bode well for her efforts at independence. Moreover, at the time of the factfinding hearing, Mother had a pending criminal matter to resolve, and Father was on probation and set to begin house arrest. In the meantime, Child has been thriving in her placement with her preadoptive foster family and does not even know Parents. The service providers have recommended termination and adoption, indicating their belief that Child would be traumatized by removal from the only family she knows. Perhaps most troubling is Parents' pattern of not attempting to visit Child so that she might have gotten to know them. Father even went so far as to specifically relinquish Child and report to DCS that he would not participate in services (including visitation) because he was "done." Tr. Vol. 2 at 161. Similarly, Mother participated in only a few visits early in the CHINS proceedings but did not avail herself of visitation after the first couple months despite being ordered to do so. By the time of the

factfinding hearing, neither Mother nor Father had seen Child for over a year or even inquired about Child's welfare when checking in with DCS. In short, Parents' failure to exercise their visitation rights demonstrates a lack of commitment to the parent-child relationship and the plan to preserve it. *See Lang,* 861 N.E.2d at 372 (failure to exercise right to visit one's children demonstrates lack of commitment to complete actions necessary to preserve parent-child relationship). The totality of the circumstances supports the trial court's conclusion that termination of Parents' parental rights is in Child's best interests. Thus, Parents have failed to establish clear error in the trial court's decision to terminate their parental relationships with Child. Accordingly, we affirm.

[17] Affirmed.

May, J., and Pyle, J., concur.